1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

| | |
|---|---|
| STEPHEN PANKEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>MR. ENDERS, *et al*,<br><br>                    Defendants. | Case No. C07-5312 FDB/KLS<br><br>REPORT AND<br>RECOMMENDATION<br><br>**NOTED FOR:**<br>**February 8, 2008** |

17

18

19

20

21

22

23

24

        This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Plaintiff Stephen Pankey filed a civil rights lawsuit under 42 U.S.C. § 1983 naming Richard A. Enders, Laurence P. Miller, Pat Gorman, and Ruben Cedeno[1].  (Dkt. # 5).  Before the Court is the motion to dismiss of Defendants Cedeno, Miller and Gorman.  (Dkt. # 20).  Defendant Enders has filed a notice of joinder in the motion to dismiss.  (Dkt. # 21).  Defendants argue that Plaintiff's Complaint must be dismissed because Plaintiff has failed to state a claim upon which relief may be granted, his claim

25

26

27

        [1]Plaintiff originally named a John John Doe OCO Secretary for Dept. Of Corrections. Defendants advise that they believe this was meant to be Defendant Ruben Cedeno, who appeared and is represented by counsel. (Dkt. # 20, p. 1).

28

REPORT AND RECOMMENDATION - 1

for injunctive relief is moot, and the Defendants are entitled to qualified immunity.  Plaintiff has

failed to file a response to the motion to dismiss.  Under Local Rule 7 (b)(2) failure to file papers in

opposition to a motion may be deemed by the court as an admission the motion has merit.

After careful review of the motion to dismiss, the Court finds that Plaintiff has stated a claim

for violation of his Eighth Amendment rights, but that Defendants' motion to dismiss should be

granted on the grounds of qualified immunity and as to Plaintiff's claims for injunctive relief.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on January 8, 2007, he was placed in segregation at the Larchmont

Corrections Center (LCC) and for thirty (30) days was denied the use of his CPAP breathing

machine.  (Dkt. # 5, p. 3)[2].  Plaintiff alleges that he has been diagnosed and treated for sleep apnea

and needs the CPAP machine to sleep.  (*Id*.).  Plaintiff's request to have the CPAP machine brought

to him was denied by LCC staff, as were his subsequent grievance and appeals.  (*Id*.).  Plaintiff

alleges that he lost sleep and suffered discomfort and fear without the machine.  (*Id*.).  In support of

his allegations, Plaintiff attaches his kite, grievance and appeal. (*Id*., pp. 5-8)[3].  Also attached to

Plaintiff's Complaint is the affidavit of Aaron Evans.  Mr. Evans testifies that he was placed in the

same segregation unit with Plaintiff and that he observed an occasion when Plaintiff stopped

breathing in his sleep and he had to awaken Plaintiff by yelling his name. (*Id*., pp. 9-10).

---

[2]Defendants offer the following definition of a CPAP machine for the Court:

CPAP stands for Continuous Positive Airway Pressure. It is often a machine used to
treat sleep apnea, which is a disorder where individuals have repeating episodes of
breathing issues causing an individual to wake up. The machine forces air through
the mouth or nasal passages keeping the airway open. *Positive Airway Pressure*
(2007), http://en.wikipedia.org/wiki/CPAP

[3]The court "may consider 'material which is properly submitted as part of the complaint.'"
*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citing *Branch v. Tunnell*, 14 F.3d 449,
453 (9th Cir. 1994).

REPORT AND RECOMMENDATION - 2

Attached to Plaintiff's Complaint are Defendants' responses to Plaintiff's grievance and appeals.  These indicate that Plaintiff was in segregation for a total of 19 days, that his request to have the CPAP machine brought to the segregation unit was denied on the grounds that staff found no medical reason for him to have the machine in the segregation unit and because the segregation cells are not equipped with plugs to allow its use.  (*Id*., p. 5).  Plaintiff's grievance and appeals were denied by Defendants Miller and Enders because the CPAP machine was not considered a medical necessity while Plaintiff was confined in segregation, staff monitored Plaintiff's sleep while he was in segregation, staff reports indicated that Plaintiff had no problem sleeping while he was in segregation, and that at no time was Plaintiff's health or safety in jeopardy.  (*Id*., pp. 6-8).

Plaintiff alleges that Defendant Gorman investigated his Level II grievance and concurred with the Level I conclusion, essentially enabling LCC staff in its initial decision.  (*Id*., p. 3). Plaintiff alleges that Defendant Cedeno reviewed his appeal and concurred with all previous decisions enabling LCC staff to deny Plaintiff the use of his CPAP machine.  (*Id*.)

Plaintiff seeks $250,000 dollars in damages and an injunction requiring DOC to train staff to deal with inmates that suffer from sleep apnea.

## II.  STANDARD OF REVIEW

The Court's review of a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6) is limited to the complaint. *Lee*, 250 F.3d at 688.  All material factual allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the light most favorable" to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969); *Lee*, 250 F.3d at 688.  A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

REPORT AND RECOMMENDATION - 3

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. *Jones v. Community Development Agency,* 733 F.2d 646, 649 (9th Cir. 1984); *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992). Although the Court must construe pleadings of pro se litigants liberally, the Court may not supply essential elements to the complaint that may not have been initially alleged. *Ivey v. Board of Regents,* 673 F.2d 266, 268 (9th Cir. 1982). Similarly, in civil rights actions, a liberal interpretation of the complaint may not supply essential elements of the claim that were not initially pled. *Pena v. Gardner*, 976 F.2d 769, 471 (9th Cir. 1992).

Before the court "may dismiss a *pro se* complaint for failure to state a claim, it "must provide the *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to dismissal." *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992); *see also Noll v. Carlson,* 809 F.2d 1446, 1449 (9th Cir. 1987). However, leave to amend need not be granted where amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

## II.  DISCUSSION

### A.    Plaintiff's 42 U.S.C. § 1983 Claim

To state a claim under 42 U.S.C. § 1983: (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v.*

*Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.

Plaintiff claims that Defendants violated his Eighth Amendment rights when they denied him the use of his sleep apnea machine while he was in the segregation unit. (Dkt. # 5, p. 3).  The Eighth Amendment requires prison officials to take reasonable measures to guarantee the health and safety of inmates. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An inmate claiming an Eighth Amendment violation relating to health care must show that the prison officials acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must prove both an objective and a subjective component. *Hudson v. McMillan*, 503 U.S. 1 (1992); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

First, the alleged deprivation must be objectively "sufficiently serious." *Farmer,* 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison officials must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health. *Id*. at 835. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. See *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). If one of the components is not

REPORT AND RECOMMENDATION - 5

established, the court need not inquire as to the existence of the other. *Helling*, 509 U.S. 25.

Defendants argue that Plaintiff's allegations are insufficient to state a constitutional claim because, for a brief period of time, he was denied a machine that helps him sleep.  (Dkt. # 20, pp. 5-6).  However, at this stage of the litigation, Plaintiff's allegations must be taken as true and construed in the light most favorable to him.  According to *Farmer*, 511 U.S. 825, "deliberate indifference" to such a serious medical need exists "if [the officer] knows that [the] inmate face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  The deliberate indifference standard "is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because 'the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (*quoting Hudson v. McMillian*, 502 U.S. 1 (1992)).

Plaintiff alleges that was diagnosed with sleep apnea, a sleeping disorder that stops the brain from receiving air when a person sleeps.  (Dkt. # 5, p. 3, 5).  Plaintiff states that he was diagnosed with this disorder by a doctor at Providence Hospital in Seattle, Washington, and was issued the CPAP machine after a sleep study was performed on him at Providence Hospital.  (*Id.*, p. 5, 7).  The machine is used to improve the quality of his breathing that "would and could possibly result in the failure of [his] lungs while sleeping."  (*Id.*, p. 7).   Plaintiff alleges that he has used his CPAP machine while in Segregation and that this was not his first time in Segregation, but it was the first time he was denied medical attention.  (*Id.*, p. 5).

Defendants knew that Plaintiff needed the CPAP machine to sleep as his request for the CPAP machine was made and denied while he was in segregation.  (Dkt. # 5, p. 5)  Plaintiff's request was denied, at least in part, on the grounds that the cell was not equipped with a proper plug

for the CPAP machine.  (*Id*).  Plaintiff alleges that he lost sleep and suffered discomfort and fear

without the machine.  (*Id*.).  A fellow inmate declares that he witnessed an occasion when Plaintiff

stopped breathing in his sleep.  (*Id*., pp. 9-10).

Thus, drawing all reasonable inferences from the record most favorably to Plaintiff, the Court

concludes that Plaintiff has alleged facts demonstrating a violation of his Eighth Amendment rights.

The question now becomes whether the constitutional right that would be violated was clearly

established.

**B.    Qualified Immunity**

Under the doctrine of qualified immunity, prison officials are protected from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982); *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997).  To determine whether a prison

official is entitled to qualified immunity, the court must perform a two part inquiry.  First, the court

considers "whether the law governing the official's conduct was clearly established." *Somers*, 109

F.3d at 617.  If the law was not clearly established at the time, "the official is entitled to immunity

from suit." *Id.*  If the law was so established, the court next asks whether "under that law, a

reasonable official would have believed the conduct was lawful." *Id.*  Thus, "an official is denied

qualified immunity only if the law was clearly established and a reasonable official could not have

believed the conduct was lawful." *Id.*

As noted above, the Court has ascertained that the facts read in the light most favorable to

Plaintiff demonstrate a violation of his Eighth Amendment rights.  The Court must now decide

whether the "contours" of the right are "sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001)

(citation omitted).  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 at 837.  Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high.  *Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002).  In these circumstances, he would be entitled to qualified immunity.  *Saucier*, 533 U.S. at 205.

Defendants argue they are entitled to qualified immunity because the relevant case law is not clearly established.  Here, they argue, there is no case law that specifically states that a CPAP machine is a medically necessary device that has to be provided under the Eighth Amendment. (Dkt. # 20, p. 9).

While we begin with the general proposition clearly established in *Farmer*, 511 U.S. at 834 – knowing disregard of a substantial risk – the determination of whether the law was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier*, 533 U.S. at 201.  The lack of subsequent authority directly on point may be relevant to the "dispositive question" of whether it would be clear to reasonable correctional officers that their conduct was unlawful in the circumstances that Defendants Enders and Miller faced.  *See, e.g., Ford v. Ramirez-Palmer*, 301 F.1043, 1050-52 (2002).

The record reflects that Defendants were aware of Plaintiff's request for the CPAP machine. (Dkt. # 5, p. 5).  Defendants' initial refusal for the CPAP machine stated "there is no medical reason for you to have this machine in the segregation unit; and these cells do not have plugs to allow it's

REPORT AND RECOMMENDATION - 8

use." (*Id*.).  In responding to Plaintiff's grievance, Defendants stated that their investigation, including a review by Defendant Enders, the LCC medical authority, found that it was not medically necessary for Plaintiff to have access to a CPAP machine while in segregation.  (*Id*.).  In addition, Defendants' report indicated that while in segregation, staff monitored Plaintiff's sleep, staff reports indicated that Plaintiff had no problems sleeping during his confinement.  (*Id.).*

In these circumstances, the Court cannot say that reasonable officers in the positions of Defendants Enders and Miller would necessarily have perceived that in denying Plaintiff the use of the CPAP machine, that their conduct was unlawful or that the risk of continuing to house Plaintiff in the segregation cell without his CPAP machine was so high as to be constitutionally impermissible.  The record provided by Plaintiff indicates that Defendants did not ignore Plaintiff's condition, but monitored him during his time in segregation.

For these reasons, the undersigned recommends that the Defendants' motion to dismiss as to Defendants Enders and Miller on the grounds of qualified immunity be granted.

**C.    Allegations Against Superintendent Gorman and OCO Secretary Cedeno**

The Court notes that Plaintiff's allegations against Defendants Gorman and Cedeno are not sufficient to state a cause of action under 42 U.S.C. § 1983 as they are based solely on these defendants' supervisory positions.  Plaintiff alleges that Defendant Gorman investigated his Level II grievance and concurred with the Level I conclusion, essentially enabling LCC staff in its initial decision.  (*Id*., p. 3).  Plaintiff alleges that Defendant Cedeno reviewed his appeal and concurred with all previous decisions enabling LCC staff to deny Plaintiff the use of his CPAP machine.  (*Id*.)

Defendants in a 42 U.S.C. § 1983 action cannot be held liable solely on the basis of supervisory responsibility or position.  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982). Vague and conclusory

allegations of official participation in civil rights violations are not sufficient. *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992). Absent some personal involvement by the defendants in the allegedly unlawful conduct of subordinates, they cannot be held liable under § 1983. *Johnson v. Duffy,* 588 F.2d 740, 743-44 (9th Cir. 1978).

Plaintiff's allegations against Defendants Gorman and Cedeno are based solely on their review of LCC staff denials of Plaintiff's request for the CPAP machine in segregation.  Plaintiff alleges that Defendants Gorman and Cedeno "enabled" the conduct of their "subordinates," i.e., LCC staff, when they agreed with the  initial denials of his kite and grievance.  These allegations are insufficient to state a cause of action under Section 1983 as these Defendants cannot be held liable on a theory of *respondent superior* alone.  At a minimum, Plaintiff must allege facts showing that these supervisory officials at least implicitly authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied,* 469 U.S. 845 (1984).

Ordinarily, the Court would recommend that Plaintiff be given notice and given an opportunity to amend his complaint.  However, such amendment would be futile in light of the Court's recommendation that Defendants Miller and Enders are entitled to qualified immunity.  Accordingly, the Court recommends that Plaintiff's claims against Gorman and Cedeno be dismissed without leave to amend.

**D.      Plaintiff's Request for Injunctive Relief**

Plaintiff requests that "due to the . . . actions" of the Defendants, "that staff be trained on how to deal with inmates who suffer from sleep apnea as well as a procedure implemented."  (Dkt. # 5, p. 4).  The Department of Corrections is not a Defendant in this matter and Plaintiff is no longer housed at the facility where the Defendants are employed.  (*Id.*, pp. 2-3).

REPORT AND RECOMMENDATION - 10

Generally, a prisoner's release or transfer from a prison will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action. *Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986). To secure injunctive relief, a plaintiff must demonstrate "a very significant possibility" that future harm will ensue. *Nelsen v. King County*, 895 F.2d 1248, 1250 (9th Cir. 1990). The burden of showing a likelihood of a recurrence of harm is "firmly on the plaintiff." Id. at 1251.

Viewing the facts as alleged in the light most favorable to Plaintiff, the Court concludes that injunctive relief is not available to Plaintiff as he is no longer housed at LCC and there is no factual allegation that he is to be returned to that facility or that he will be in contact with Defendants in the future.   In addition, Plaintiff has not alleged any immediate likely threat regarding his CPAP machine.   Therefore, he also lacks standing to request a permanent injunction.

The undersigned therefore recommends that Defendants' motion to dismiss Plaintiff's claims for injunctive relief be granted

### III. CONCLUSION

The undersigned concludes that Defendants are entitled to qualified immunity because it would not have been clear to a reasonable correctional officer knowing what each knew (viewed in the light most favorable to Plaintiff) that denying Plaintiff his CPAP machine while he was housed in segregation posed such a substantial risk of serious harm that doing so would be constitutionally impermissible.   In addition, Plaintiff has not stated a claim against Defendants Gorman and Cedeno and Plaintiff is not entitled to injunctive relief.   A proposed order accompanies this Report and Recommendation.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.

1

*See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

2

purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed

3

by Rule 72(b), the clerk is directed to set the matter for consideration on **February 8, 2008**, as

4

noted in the caption.

5

6

7

        DATED this <u>14th</u> day of January, 2008.

8

9

10

                                                Karen L. Strombom
11                                              United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION - 12